# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

JESSE K. ENGEBRETSON and                    CV 09-98-M-DWM-JCL
CATHERINE T. ENGEBRESTON,

                    Plaintiffs,

                                             ORDER, and
         vs.                                 FINDINGS AND
                                             RECOMMENDATION
                                             OF UNITED STATES
MIKE MAHONEY, Warden,                        MAGISTRATE JUDGE
Montana State Prison; WILLIAM
SLAUGHTER, Director of the
Department of Corrections for the
State of Montana; and
THE STATE OF MONTANA,

                    Defendants.
_____

     Pending before the Court is Defendants Mike Mahoney and William

Slaughter's Motion to Dismiss filed under Fed. R. Civ. P. 12(b)(1) and (6).  Also

pending is the State of Montana's Motion to Set Aside Entry of Default filed under

Fed. R. Civ. P. 55(c).

     For the reasons stated below, the Court recommends that Defendants'

motions be granted.  Plaintiffs Jesse and Catherine Engebretson, however, will be

afforded an opportunity to file an amended complaint.

ORDER, and
FINDINGS AND RECOMMENDATION - Page 1

I.      **BACKGROUND**

Plaintiffs Jesse and Catherine Engebretson, husband and wife, filed this action seeking compensation for damages they allege were caused by Defendants. The Engebretsons are proceeding *pro se* in this action.

The Engebretsons' claims stem from a criminal sentence Jesse Engebretson served following his criminal convictions on four counts of sexual assault. In 1993, the Montana Fourth Judicial District Court sentenced Jesse to a term of 20 years of imprisonment, followed by 30 years of probation. Jesse was incarcerated at the Montana State Prison for approximately 10 years.

After completing the 10-year period of incarceration, Jesse successfully challenged the legality of the 30-year probationary term before the Montana Supreme Court. On September 6, 2007, the Montana Fourth Judicial District Court issued an amended judgment which sentenced Jesse to a term of 20 years of incarceration on each of the four counts to be served concurrently. The amended judgment gave Jesse credit for his time served, and it suspended his sentences on each of the four counts.

The Engebretsons' Complaint alleges that, in light of the amended sentence imposed against Jesse on September 6, 2007, he was "illegally incarcerated" under

ORDER, and
FINDINGS AND RECOMMENDATION - Page 2

the terms of his original sentence.  The allegations assert that Jesse "served more than four years and two months [1,520 days] in prison[]" longer than what he should have served.  Dkt. # 1 at 3.

The Engebretsons seek compensation for damages they allegedly sustained as a result of the original sentence that was illegally imposed against Jesse.  They request recovery of emotional and financial damages.

## II.   APPLICABLE LAW

### A.   Motion to Dismiss - Rule 12(b)(6)

A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  In addressing a Rule 12(b)(6) challenge the Court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party.  *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).  However, even a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that the plaintiff failed to plead initially.

ORDER, and
FINDINGS AND RECOMMENDATION - Page 3

*Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Additionally, the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court's standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading "must contain: [...] (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Rule 8).  Although Rule 8(a)(2) does not require "detailed factual allegations", a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff.  *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 129 S.Ct. at 1949.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

ORDER, and
FINDINGS AND RECOMMENDATION - Page 4

*Id*.

Finally, as a general rule "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). However, a court may take judicial notice of "matters of public record." *Id*. Specifically, a court may take judicial notice of other court proceedings. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

### B. Liberal Construction of *Pro Se* Pleadings

Because the Engebretsons are proceeding *pro se* the Court must construe their pleading liberally, and the pleading is held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Although the Court has authority to dismiss a defective pleading,

> a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

ORDER, and
FINDINGS AND RECOMMENDATION - Page 5

III.    DISCUSSION

    A.    Additional Background Facts Based on Public Record Documents

In support of their Motion to Dismiss Defendants have submitted copies of documents filed in Jesse's criminal case in the Montana Fourth Judicial District Court.  The Court may take judicial notice of those public records.

The documents in Jesse's criminal case establish that on October 26, 1993, Jesse pled guilty to four counts of sexual assault.  A written Judgment of Jesse's conviction and sentence was entered on November 8, 1993.  The court sentenced Jesse to serve a 20-year term of incarceration on each of the four convictions, and the sentences were to run concurrently.

The Montana Fourth Judicial District Court also designated Jesse a persistent felony offender ("PFO").  Based on the PFO designation, the District Court sentenced Jesse to serve an additional 30 years in the Montana State Prison, and it ordered that the PFO sentence would run consecutive to the sentences imposed on the sexual assault convictions.  The District Court, however, suspended the entire PFO sentence.

Jesse entered the Montana State Prison on November 10, 1993, to begin his term of incarceration.  Jesse completed the prison portion of his sentences and was

ORDER, and
FINDINGS AND RECOMMENDATION - Page 6

released from the Montana State Prison on September 19, 2003.[1]  Upon his release

from prison, Jesse was on probation serving his 30-year suspended sentence that

was imposed based on the PFO designation.

On June 22, 2006, Jesse filed a petition for a writ of habeas corpus with the

Montana Supreme Court challenging the legality of the 30-year suspended

sentence.  On October 31, 2006, the Montana Supreme Court granted Jesse's

petition.  In substance, the Montana Supreme Court concluded that the District

Court lacked authority to suspend the entire PFO sentence.  Accordingly, the court

remanded the matter to the District Court for resentencing.

On September 18, 2007, the District Court issued a Judgment following

resentencing that eliminated Jesse's PFO designation.  In substance, the September

18, 2007 Judgment concluded that Jesse had fully served all portions of his

sentences.  Subsequently, on November 7, 2007, the District Court issued an

amended order which clarified that "Defendant's sentence has been discharged" as

of September 18, 2007, and that there was no period of probation remaining.[2]

-----

[1]Although the date of Jesse's release from prison is not part of the public record, the parties agree he was released on September 19, 2003.

[2]This November 7 Order was filed on November 8, 2007, which is the date the Engebretsons assert Jesse's suspended PFO sentence was declared invalid.

ORDER, and
FINDINGS AND RECOMMENDATION - Page 7

**B.**     **Claims Under 42 U.S.C. § 1983**

Liberally construed, the Court finds the Engebretsons' Complaint is filed, in

part, pursuant to 42 U.S.C. § 1983.

> To sustain an action under section 1983, a plaintiff must show (1) that the
> conduct complained of was committed by a person acting under color of
> state law; and (2) that the conduct deprived the plaintiff of a federal
> constitutional or statutory right.

*Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).  The Defendants in this

action are individuals who have acted under color of state law, and who have

allegedly deprived the Engebretsons of their federal rights in light of the amended

criminal sentence imposed against Jesse on November 7, 2007.

**1.**     **The Engebretsons' Claims Challenging Jesse's Illegal
Incarceration**

The Engebretsons allege Jesse was "illegally incarcerated" at the Montana

State Prison for a longer period of time than required under his amended sentence.

As a matter of law, however, the Court concludes the Engebretsons cannot pursue

those claims under 42 U.S.C. § 1983 at this time.

A plaintiff cannot prosecute a § 1983 action for damages based on an

allegedly illegal conviction or criminal sentence unless the plaintiff has first

obtained a prior judgment invalidating the conviction or sentence.  The United

ORDER, and
FINDINGS AND RECOMMENDATION - Page 8

States Supreme Court has concluded that when a plaintiff brings a § 1983 suit that

stems from a criminal conviction or sentence which the plaintiff has not previously

overturned or invalidated,

> the district court must consider whether a judgment in favor of the
> plaintiff would necessarily imply the invalidity of his conviction or
> sentence; if it would, the complaint **must be dismissed** unless the
> plaintiff can demonstrate that the conviction or sentence has already
> been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (emphasis added).

To the extent the Engebretsons' allegations challenge the legality of Jesse's

period of incarceration at the Montana State Prison, their claims are barred by

*Heck*.  The Engebretsons' claims, as currently pled, would necessarily imply that

Jesse's term of incarceration at Montana State Prison was invalid.  The

Engebretsons have not obtained a prior ruling invalidating Jesse's term of

incarceration.  Therefore, Defendants' motion should be granted in this respect.

The Engebretsons effectively concede this point.

In response to Defendants' Motion to Dismiss, the Engebretsons clarify that

their claims advanced in this case arise only from the period of time Jesse was on

probation after his release from prison.  Contrary to the express allegations set

forth in their Complaint, the Engebretsons now assert they are not challenging

ORDER, and
FINDINGS AND RECOMMENDATION - Page 9

Jesse's term of incarceration at the Montana State Prison. Instead, based on

Jesse's successful habeas corpus petition and the District Court's resentencing

orders, the Engebretsons argue that Jesse's PFO sentence was illegally imposed,

and the term of probation that he served on the PFO sentence was illegal.

Specifically, the Engebretsons assert Defendants are liable for illegally subjecting

Jesse to a period of probation from September 19, 2003 (when Jesse was released

from prison), until November 8, 2007 (when the District Court's amended order

was filed).

Although the Engebretsons' allegations in their Complaint are directed at

Jesse's term of incarceration in the Montana State Prison, liberally construed the

allegations also indicate that they intend to impose liability against Defendants for

the period of time during which Jesse was on probation. They allege Jesse was

subjected to "restraint of his liberty." Dkt. # 1 at 3.

"[D]ismissal without leave to amend is improper unless it is clear, upon de

novo review, that the complaint could not be saved by any amendment."

*Schneider v. California Department of Corrections*, 151 F.3d 1194, 1196 (9th Cir.

1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). The Court

finds the Engebretsons could amend their allegations to clarify that their claims

ORDER, and
FINDINGS AND RECOMMENDATION - Page 10

stem from Jesse's period of probation following his release from the Montana

State Prison, and the Court will give the Engebretsons an opportunity to do so.[3]

## 2.      Catherine Engebretson's Claims Under 42 U.S.C. § 1983

Defendants move to dismiss Catherine's claims advanced under § 1983 on

the ground her allegations do not assert that Defendants violated Catherine's

federal rights.  The Court agrees that Catherine's allegations fail to state a claim

for relief under § 1983 - the Engebretsons' allegations do not allege any facts

indicating that Defendants deprived Catherine of a federal constitutional or

statutory right.  *See Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).  Section

1983 "does not provide a remedy for abuses that do not violate federal law[.]"

*Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 119 (1992).  Accordingly,

Catherine's claims, as pled, are subject to dismissal.

In response to Defendants' Motion to Dismiss, Catherine expands her

argument beyond the allegations of the Complaint and asserts Defendants are

_____

[3]Defendants' Motion to Dismiss is based solely on the premise that Jesse's
sentence of incarceration has not been declared illegal.  Defendants did not
advance any arguments requesting dismissal of the Engebretsons' claims seeking
damages stemming from Jesse's term of probation.  Although the Court will allow
the Engebretsons to amend their allegations in this regard, the Court expresses no
view as to whether the Engebretsons could advance any cognizable claim against
the individual Defendants based on the term of probation Jesse served pursuant to
his original criminal sentence.

ORDER, and
FINDINGS AND RECOMMENDATION - Page 11

liable for interfering with her marital relationship.  Specifically, she contends the

conditions imposed upon Jesse during the 4-year period he was on probation

improperly interfered with their marriage.

In limited situations, certain aspects of marital relationships enjoy

protection under the United States Constitution against unjustified interference by

the States.  *See e.g. Roberts v. U.S. Jaycees*, 468 U.S. 609, 618-19 (1984) (citing

cases).

> [Marital and] [f]amily relationships, by their nature, involve deep
> attachments and commitments to the necessarily few other individuals with
> whom one shares not only a special community of thoughts, experiences,
> and beliefs but also distinctively personal aspects of one's life.

*Roberts*, 468 U.S. at 619-20.  These relationships constitute the type of intimate

and highly personal relationships that are protected as an intrinsic element of an

individual's personal liberty and freedom of association.  *Id*. at 620.  The United

States Supreme Court has characterized marriage as "the most important relation

in life," and as "the foundation of the family and of society, without which there

would be neither civilization nor progress[.]"  *Zablocki v. Redhail*, 434 U.S. 374,

384 (1978) (quoting *Maynard v. Hill*, 125 U.S. 190, 205 and 211 (1888)).

"[F]reedom of personal choice in matters of marriage and family life is one of the

liberties protected by the Due Process Clause of the Fourteenth Amendment."

ORDER, and
FINDINGS AND RECOMMENDATION - Page 12

*Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 499 (1977) (quoting

*Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639-40 (1974)).

Despite the Supreme Court's long history of recognizing aspects of the

marital relationship as fundamental liberty interests, "the Court has never

sanctioned constitutional protection of consortium[]" in the marital relationship.

*Pagan v. Township of Raritan*, 2006 WL 2466862, *10 (D.N.J. 2006).  Instead,

"[f]ederal courts have generally held [...] that plaintiffs alleging federal civil rights

violations may not sue for the loss of companionship of a family member[,]"

because the claim is not legally cognizable under federal law and § 1983.  *Rzayeva*

*v. United States*, 492 F. Supp. 2d 60, 83 (D. Conn. 2007) (citing cases).  Generally,

a plaintiff's claim seeking compensation for the loss of support, consortium, or

companionship with his or her spouse does not rise to the level of "a

constitutionally protected substantive liberty interest, the deprivation of which

may be redressed under § 1983."  *Tate v. Waller*, 2007 WL 2688532, *6 (S.D.

Miss. 2007) (citing cases).  *But see Pahle v. Colebrookdale Township*, 227 F.

Supp. 2d 361, 380-81 (E.D. Pa. 2002) (permitting consortium claim under § 1983),

and *Brodlic v. City of Lebanon*, 2005 WL 2250840, *8 (M.D. Pa. 2005) (same).

The Court has not found any legal precedent within the Ninth Circuit

ORDER, and
FINDINGS AND RECOMMENDATION - Page 13

recognizing a spouse's claim for the loss of consortium or companionship as a constitutionally protected liberty interest in the context of a husband's probation.[4] Furthermore, the majority of federal courts which have addressed the issue of whether a spouse's loss of consortium or companionship rises to the level of a constitutionally protected liberty interest cognizable under § 1983 have concluded that it does not.

The Supreme Court has cautioned against "expand[ing] the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Unwarranted extensions of the liberty interests that are to be protected as a matter of substantive due process would improperly "place the matter outside the arena of public debate and legislative action." *Id*. Recognition

---

[4]The Court finds one District Court decision in the Ninth Circuit which concluded that, in certain situations, a spouse may pursue a claim under § 1983 "for interference with her liberty interest in the companionship of her spouse." *Trevino v. Lassen Municipal Utility District*, 2008 WL 1349063, *5 (E.D. Cal. April 9, 2008). In *Trevino*, the court permitted a wife to assert the § 1983 claim in connection with her husband's alleged wrongful termination from governmental employment. The governmental employment context, however, does not logically equate to a situation involving a term of probation, and prior to this April 9, 2008 decision in *Trevino* "no in-circuit precedent" existed supporting "the proposition that a person possesses a liberty interest in the companionship of her spouse." *Trevino v. Lassen Municipal Utility District*, 2009 WL 385792, *17 (E.D. Cal. February 13, 2009).

ORDER, and
FINDINGS AND RECOMMENDATION - Page 14

of a liberty interest for a spouse affected by the conditions imposed on the probation of the other spouse would be such an unwarranted extension.

Because Catherine's § 1983 claim asserts a legal theory that is not cognizable as a matter of law, it fails to state a claim upon which relief could be granted.  Under the facts of this case, the claim should be dismissed.

The Court notes that Catherine advances at least one claim under Montana law.  She alleges Defendants are liable for her loss of consortium - a viable cause of action under Montana law.  *See Gunning v. General Motors Corp.*, 239 Mont. 104, 107, 779 P.2d 64, 66 (Mont. 1989).  The Court could exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(a).  Therefore, at this stage of the proceedings, Catherine will be allowed to continue her loss of consortium claim under Montana law.

### C.   Setting Aside Entry of Default Against the State of Montana

By Order entered February 19, 2010, and upon motion of the Engebretsons, the Court directed the Clerk of Court to enter default against Defendant State of Montana pursuant to Fed. R. Civ. P. 55(a).  On February 24, 2010, the State of Montana filed its Motion to Set Aside Entry of Default as permitted under Fed. R. Civ. P. 55(c).

ORDER, and
FINDINGS AND RECOMMENDATION - Page 15

"The court may set aside an entry of default for good cause[.]"  Fed. R. Civ.

P. 55(c).   The court has discretion in determining whether to set aside the entry of

default against a defendant.  *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th

Cir. 1994).

In exercising its discretion in ruling on a motion to set aside the entry of

default, the court should consider whether:  (1) the defendant "engaged in culpable

conduct that led to the default[,]" (2) the defendant had a meritorious defense, and

(3) setting aside the entry of default would prejudice the plaintiff.  *Franchise*

*Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th

Cir. 2004) (citation omitted).  The moving defendant bears "the burden of showing

that any of these factors favored setting aside the default."  *Id*.  "Where timely

relief is sought from a default ... and the movant has a meritorious defense, doubt,

if any, should be resolved in favor of the motion to set aside the default so that

cases may be decided on their merits."  *O'Connor*, 27 F.3d at 364 (quoting

*Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir. 1986)).

## 1.    **Culpable Conduct**

In general, a defendant's conduct is culpable if the defendant "has received

actual or constructive notice of the filing of the action and *intentionally* failed to

ORDER, and
FINDINGS AND RECOMMENDATION - Page 16

answer." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001)

(emphasis in original).  "Intentional" means "willful, deliberate, or evidence of bad

faith."  *Id*.  Thus, conduct is "culpable" "where there is no explanation of the

default inconsistent with a devious, deliberate, willful, or bad faith failure to

respond."  *Id*. at 698.  In contrast, however,

> [n]eglectful failure to answer as to which the defendant offers a credible,
> good faith explanation negating any intention to take advantage of the
> opposing party, interfere with judicial decisionmaking, or otherwise
> manipulate the legal process is not "intentional" under our default cases.

*Id*.

In defense of its failure to answer or otherwise defend against the

Engebretsons' Complaint, the State of Montana explains that it did not believe it

was a party to this civil action.  Although the State of Montana is identified as a

Defendant in the caption on page 1 of the Complaint, it is not listed on page 2 of

the Complaint in the list of separately identified parties to this action.  Also,

although the State of Montana recognizes that the Engebretsons effected service of

the summons and Complaint on it, the State believed the service was simply due to

the Engebretsons' unfamiliarity with the proper service procedures.

The State was not at liberty to ignore the fact it was named as a defendant in

the caption of the Complaint.  If the State believed the Complaint failed to

ORDER, and
FINDINGS AND RECOMMENDATION - Page 17

advance a claim against it, the proper procedural vehicle to challenge the adequacy of the Complaint was a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  Alternatively, the State could have filed a motion for a more definite statement under Fed. R. Civ. P. 12(e).  By doing neither, the State placed itself in default.

Nonetheless, the Court concludes the State of Montana has provided a reasonable explanation for the default that is inconsistent with a devious, deliberate, willful, or bad faith failure to respond.  The State's explanation negates any indication that it sought to take advantage of the Engebretsons, to interfere with the judicial decisionmaking in this case, or to otherwise manipulate the legal process.  Therefore, the State's failure to respond does not qualify as "intentional" or "culpable" conduct.

## 2.   **Meritorious Defenses**

The Court concludes the State of Montana has meritorious defenses to the Engebretsons' claims.  First, the Engebretsons cannot maintain their legal claims advanced against the State of Montana because it is immune from suit in federal court under the Eleventh Amendment to the United States Constitution.

"The Eleventh Amendment has been authoritatively construed to deprive federal courts of jurisdiction over suits by private parties against unconsenting

ORDER, and
FINDINGS AND RECOMMENDATION - Page 18

States." *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996)).  Although the amendment does not expressly prohibit suits brought against a state by its own citizens, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Consequently, absent waiver of this Eleventh Amendment immunity, a state may not be subject to suit in federal court.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 70 (1989).

"In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [a federal court] will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" *Edelman*, 415 U.S. at 673 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).  No express waiver of the State's Eleventh Amendment immunity exists in the law of Montana.  Montana's limited waiver of immunity for tort actions in its own courts, as set forth in Article II, Section 18 of Montana's Constitution and Mont. Code Ann. §§ 2-9-101 et seq., does not constitute a waiver of the State's Eleventh

ORDER, and
FINDINGS AND RECOMMENDATION - Page 19

Amendment Immunity.  *State of Montana v. Peretti*, 661 F.2d 756, 758 (9th Cir.

1981) and *Ward v. Montana State Prison*, 2008 WL 564692, *3 (D. Mont. 2008).

   The State of Montana has not waived its immunity to suit in federal court.

Accordingly, the Engebretsons' claims against it are barred by the Eleventh

Amendment.

   Additionally, to the extent the Engebretsons assert claims against the State

of Montana under 42 U.S.C. § 1983, they cannot sustain those claims.  Section

1983 requires that the defendant must be a "person" acting under color of state

law, and neither the State of Montana nor its agencies are "persons" within the

meaning of § 1983.  *Will*, 491 U.S. at 71.  Consequently, the Engebretsons'

allegations under § 1983 against the State of Montana fail to state a claim on

which relief may be granted.

### 3.   <u>Prejudice to the Engebretsons</u>

   In assessing whether a plaintiff would be prejudiced by setting aside an

entry of default, the court must consider whether it would "result in greater harm

than simply delaying resolution of the case."  *TCI Group*, 244 F.3d at 701.  "[T]he

standard is whether [plaintiff's] ability to pursue his claim will be hindered."  *Id*.

   At this relatively early stage of this lawsuit, other than the legal defenses

ORDER, and
FINDINGS AND RECOMMENDATION - Page 20

discussed above, there exist no circumstances which would hinder the Engebretsons from pursuing their claims if the default against the State of Montana is set aside.  This factor weighs in favor of setting aside the entry of default.

Having considered the factors relative to the propriety of setting aside the entry of default, the Court finds the State of Montana has presented good cause in support of its motion.  In view of the State's meritorious defenses, doubt should be resolved in favor of setting aside the default to resolve this action on its merits. Accordingly, the State of Montana's motion should be granted, and the entry of default against it should be set aside.

## IV.   CONCLUSION

Based on the forgoing, **IT IS HEREBY RECOMMENDED** that Defendants Mike Mahoney and William Slaughter's Motion to Dismiss should be **GRANTED.**  The Engebretsons' claims challenging Jesse's term of incarceration, and Catherine's § 1983 claim should be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that Defendant State of Montana's Motion to Set Aside Entry of Default[5] should be **GRANTED.**

---

[5]*See Business Credit Leasing, Inc. v. City of Biddeford*, 770 F. Supp. 31, 35 (D. Maine 1991) (treating a motion to set aside the entry of default as a dispositive

ORDER, and
FINDINGS AND RECOMMENDATION - Page 21

**FURTHER, IT IS ORDERED** that the Engebretsons may file an amended complaint setting forth short and plain allegations showing they are entitled to relief, and they shall do so on or before **March 25, 2010.** The Clerk of Court is directed to provide the Engebretsons with a form for filing an amended complaint.

At all times during the pendency of this action, the Engebretsons SHALL IMMEDIATELY ADVISE the Court of any change of their address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

If the Engebretsons fails to timely comply with every provision of this Order the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

DATED this 3rd day of March, 2010.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

motion under 28 U.S.C. § 636(b)(1)(B) requiring a recommendation to a district judge).

ORDER, and
FINDINGS AND RECOMMENDATION - Page 22