**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

JESSE K. ENGEBRETSON and                    CV 09-98-M-DWM-JCL
CATHERINE T. ENGEBRESTON,

                    Plaintiffs,

            vs.                                                 FINDINGS AND
                                                                RECOMMENDATION
                                                                OF UNITED STATES
MIKE MAHONEY, Warden,                              MAGISTRATE JUDGE
Montana State Prison; WILLIAM
SLAUGHTER, Director of the
Department of Corrections for the
State of Montana; and
THE STATE OF MONTANA,

                    Defendants.

_____

        Pending before the Court is Defendants Mike Mahoney, William Slaughter,

and the State of Montana's Motion to Dismiss filed under Fed. R. Civ. P. 12(b)(1)

and (6).  For the reasons stated below, the Court recommends that Defendants'

motion be granted, and this action should be dismissed.

**I.      BACKGROUND**

        Plaintiffs Jesse and Catherine Engebretson, husband and wife, filed this

action seeking compensation for damages they allege were caused by Defendants.

FINDINGS AND RECOMMENDATION - Page 1

The Engebretsons are proceeding *pro se* in this action.

Defendant William Slaughter is the Director of the Montana Department of Corrections, and Defendant Mike Mahoney is the Warden of the Montana State Prison.

The Engebretsons' claims stem from a criminal sentence Jesse Engebretson served following his criminal convictions in the Montana Fourth Judicial District Court on four counts of sexual assault. Jesse was incarcerated at the Montana State Prison for a period of approximately 10 years pursuant to the sentence imposed on his judgment of conviction.

After completing the 10-year period of incarceration Jesse was released from prison on September 19, 2003, to begin serving a period of probation on a suspended portion of his sentence. After his release from prison Jesse filed a writ of habeas corpus with the Montana Supreme Court, and he successfully challenged the legality of his probationary sentence. His term of supervised probation was declared illegal as of November 8, 2007. Thus, as stated in the sole Count of the Engebretsons' Second Amended Complaint, their legal claims are premised solely on Jesse's assertion that he "served more than 4 years with my liberties restrained illegally[]" from September 19, 2003, until November 8, 2007. Dkt. #46 at 5 of 18.

FINDINGS AND RECOMMENDATION - Page 2

The Engebretsons allege Slaughter and Mahoney are directly responsible for Jesse's illegal term of probation.  They allege the fact of Jesse's probation, and the conditions of his probation were illegal, that "[e]ach and every restraint of [Jesse's] liberty was approved by Defendant Slaughter, and Defendant Mahoney[,]" yet "Mike Mahoney and William Slaughter would only release [Jesse] to a probationary sentence, even though [Jesse] had informed them that such was an illegal sentence."  Dkt. #46 at 5 and 8 of 18.

The Engebretsons advance various legal claims under Count I of their pleading.  They allege that in view of the fact that Jesse's probation was subsequently declared illegal, Defendants had unlawfully deprived Jesse of his liberty and property while he was on probation in violation of the protections afforded to him under the United States Constitution.  Next, the Engebretsons allege Defendants' conduct wrongfully interfered with their marital relationship in violation of the United States Constitution.  Finally, Catherine Engebretson asserts a claim for loss of consortium.

The Engebretsons seek compensation for damages they allegedly sustained as a result of the illegal term of probation imposed against Jesse and which was executed by Defendants.  They request recovery of emotional and financial damages, and they request an award of punitive damages.

FINDINGS AND RECOMMENDATION - Page 3

## II.   APPLICABLE LAW

### A.   Motion to Dismiss - Rule 12(b)(6)

A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either

when it asserts a legal theory that is not cognizable as a matter of law, or if it fails

to allege sufficient facts to support an otherwise cognizable legal claim.

*SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780,

783 (9ᵗʰ Cir. 1996).  In addressing a Rule 12(b)(6) challenge the Court accepts all

factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the*

*Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light

most favorable to the nonmoving party.  *Tanner v. Heise*, 879 F.2d 572, 576 (9ᵗʰ

Cir. 1989).  However, the Court is not required to accept legal conclusions cast in

the form of factual allegations if those conclusions cannot reasonably be drawn

from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9ᵗʰ

Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The standard of review under Rule 12(b)(6) is informed by the provision of

Fed. R. Civ. P. 8(a)(2) which requires that a pleading "must contain: [...] (2) a

short and plain statement of the claim showing that the pleader is entitled to

relief[.]"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting

Rule 8).  Although Rule 8(a)(2) does not require "detailed factual allegations", a

FINDINGS AND RECOMMENDATION - Page 4

plaintiff must set forth more than bare allegations that the defendant unlawfully

harmed the plaintiff.  *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft*, 129 S.Ct. at 1949.

> A claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged.

*Id*.

## B.    Liberal Construction of *Pro Se* Pleadings

Because the Engebretsons are proceeding *pro se* the Court must construe

their pleading liberally, and the pleading is held "to less stringent standards than

formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).  Although the

Court has authority to dismiss a defective pleading,

> a district court should grant leave to amend even if no request to amend the
> pleading was made, unless it determines that the pleading could not possibly
> be cured by the allegation of other facts.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*,

58 F.3d 494, 497 (9th Cir. 1995)).

FINDINGS AND RECOMMENDATION - Page 5

## III.   DISCUSSION

### A.   Additional Background Facts Based on Public Record Documents

In support of their Motion to Dismiss Defendants have submitted copies of documents filed in Jesse's criminal case in the Montana Fourth Judicial District Court, and other documents filed with the Montana Supreme Court.  Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  However, a court may take judicial notice of "matters of public record."  *Id.*  Specifically, a court may take judicial notice of other court proceedings.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).  Therefore, the Court will take judicial notice of the public records submitted by Defendants.

The documents in Jesse's criminal case establish that on October 26, 1993, Jesse pled guilty to four counts of sexual assault.  A written Judgment of Jesse's conviction and sentence was entered on November 8, 1993.  The District Court sentenced Jesse to serve a 20-year term of incarceration on each of the four convictions, and the sentences were to run concurrently.

The District Court also designated Jesse as a persistent felony offender under Mont. Code Ann. §§ 46-18-501 and 502, and sentenced him to serve an

FINDINGS AND RECOMMENDATION - Page 6

additional 30 years of incarceration to run consecutive to the sentences imposed on the sexual assault convictions. The District Court, however, suspended the entire persistent felony offender sentence.

Jesse entered the Montana State Prison on November 10, 1993, and was ultimately released from confinement on September 19, 2003.[1] Following his release, Jesse was placed on probation for the 30-year suspended sentence as a persistent felony offender.

On June 22, 2006, while on probation, Jesse filed a petition for a writ of habeas corpus with the Montana Supreme Court challenging the legality of the 30-year suspended sentence. On October 31, 2006, the Montana Supreme Court granted Jesse's petition. In substance, the Montana Supreme Court concluded that the District Court lacked authority, under Mont. Code Ann. § 46-18-502(3), to suspend the entire persistent felony offender sentence. Accordingly, the court remanded the matter to the District Court for resentencing.

On September 18, 2007, the District Court issued a Judgment following resentencing. The Judgment sentenced Jesse on the four counts of sexual assault, credited him for his period of incarceration he already served, and eliminated

---

[1]Although the date of Jesse's release from prison is not part of the public record, the parties agree he was released on September 19, 2003.

FINDINGS AND RECOMMENDATION - Page 7

Jesse's persistent felony offender designation.  In substance, the September 18, 2007 Judgment concluded that Jesse had fully served all portions of his sentences.

On November 7, 2007, the District Court issued an order amending the September 18, 2007 Judgment.  The amended order clarified that "Defendant's sentence has been discharged" as of September 18, 2007, and that there was no period of probation remaining.  This November 7 Order was filed on November 8, 2007, which is the date the Engebretsons assert Jesse's term of probation was declared invalid.  Thus, the Engebretsons' claims stem from Jesse's 4-year term of probation - from his release from prison on September 19, 2003, through November 8, 2007 - which the Engebretsons allege was illegally imposed and, thus, illegally enforced by Defendants.

### B.    <u>State of Montana - Jurisdiction - Eleventh Amendment Immunity</u>

Defendants move, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the Engebretsons' claims advanced against the State of Montana for lack of jurisdiction based upon the State's immunity from suit in federal court under authority of the Eleventh Amendment to the United States Constitution.

Fed. R. Civ. P. 12(b)(1) provides the procedural authority for a defendant to challenge the existence of jurisdiction.  The plaintiff bears the burden of proving jurisdiction when jurisdiction is challenged under Rule 12(b)(1).  *Tosco Corp. v.*

*Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).

A defendant may pursue a Rule 12(b)(1) motion to dismiss either as a facial

challenge to the jurisdictional allegations of a pleading, or as a substantive

challenge to the facts underlying those allegations.  *Savage v. Glendale Union*

*High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir.

2003).  A facial challenge is one which contends the allegations "are insufficient

on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373

F.3d 1035, 1039 (9th Cir. 2004).  Defendants' pending motion in this case

constitutes a facial challenge to the jurisdictional basis of the Engebretsons'

claims against the State of Montana.

In addressing a facial challenge to jurisdiction the court need only consider

the allegations in the complaint without concerning itself with any potential

factual dispute.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  Therefore,

the court must assume the allegations in the complaint are true and it "must draw

all reasonable inferences in [plaintiff's] favor."  *Id*.  Additionally, where a plaintiff

is proceeding *pro se*, the court must liberally construe the allegations.  *Id*.

"The Eleventh Amendment has been authoritatively construed to deprive

federal courts of jurisdiction over suits by private parties against unconsenting

States."  *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008)

FINDINGS AND RECOMMENDATION - Page 9

(citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996)).  Although

the text of the amendment does not expressly prohibit suits brought against a state

by its own citizens, the Supreme Court has "consistently held that an unconsenting

State is immune from suits brought in federal courts by her own citizens as well as

by citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Consequently, absent a waiver of this Eleventh Amendment immunity, a state may

not be subject to suit in federal court by a private party seeking to impose liability

for monetary damages.  *Will v. Michigan Department of State Police*, 491 U.S. 58,

70 (1989).

"In deciding whether a State has waived its constitutional protection under

the Eleventh Amendment, [a federal court] will find waiver only where stated 'by

the most express language or by such overwhelming implications from the text as

(will) leave no room for any other reasonable construction.'"  *Edelman*, 415 U.S.

at 673 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

No express waiver of the State's Eleventh Amendment immunity exists in

the law of Montana.  Montana's limited waiver of immunity for tort actions in its

own courts, as set forth in Article II, Section 18 of Montana's Constitution and

Mont. Code Ann. §§ 2-9-101 et seq., does not constitute an express waiver of the

State's Eleventh Amendment immunity.  *State of Montana v. Peretti*, 661 F.2d

FINDINGS AND RECOMMENDATION - Page 10

756, 758 (9th Cir. 1981); *Black v. Goodman*, 736 F. Supp. 1042, 1044 (D. Mont. 1990).

The State of Montana has not waived its immunity to suit in federal court. Accordingly, the Engebretsons' claims against it are barred by the Eleventh Amendment.

### C.   <u>Slaughter and Mahoney - Quasi-Judicial Immunity</u>

Slaughter and Mahoney move to dismiss the Engebretsons' claims against them on the grounds they are entitled to absolute immune from liability under the doctrine of quasi-judicial immunity.  For the reasons discussed below, the Court agrees.

Liberally construed, the Court finds the Engebretsons' Complaint is filed, in part, pursuant to 42 U.S.C. § 1983.

> To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.

*Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).  Slaughter and Mahoney are alleged to have acted under color of state law, and have allegedly deprived the Engebretsons of their federal rights in light of the amended criminal sentence imposed against Jesse on November 7, 2007.  Therefore, the Court will analyze

FINDINGS AND RECOMMENDATION - Page 11

this case under the decisional law applicable to § 1983 actions.

In considering whether a particular state official is entitled to absolute immunity from liability under § 1983, the United States Supreme Court has followed a two-step analytical approach.  First, "the Supreme Court has 'generally looked for a historical or common-law basis for the immunity in question.' "  *al-Kidd v. Ashcroft*, 580 F.3d 949, 959 (9th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985)).  Second, even if a court can identify an historical, common-law tradition of absolute immunity for a particular official, or the function an official performed, the court must still consider "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions.' "  *al-Kidd*, 580 F.3d at 959 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) and *Tower v. Glover*, 467 U.S. 914, 920 (1984)).

In considering the first prong of the absolute immunity analysis the Court finds that under common law corrections officials and jailers "were absolutely immune from damages for confining a prisoner pursuant to a valid order of confinement."  *Patterson v. Von Riesen*. 999 F.2d 1235, 1239 (8th Cir. 1993).[2]

---

[2]The Ninth Circuit has never directly passed on the question of whether absolute quasi-judicial immunity should be extended under § 1983 to jailers who have simply confined or restrained a person in compliance with a facially valid order of conviction.  *See Wilson v. Poulos*, 2010 WL 1068067, *3 (S.D. Cal. 2010).

FINDINGS AND RECOMMENDATION - Page 12

> [T]he privilege of a jailor to hold a prisoner pursuant to a judicial process regular on its face and issued by a court of competent jurisdiction [is] "quite as time-honored in the Anglo-American common law as is the immunity of members of the legislature and of judges from civil liability for acts done within the sphere of their judicial activities."

*Patterson*, 999 F.2d at 1239 (quoting *Francis v. Lyman*, 216 F.2d 583, 588-89 (1st

Cir. 1954) and citing *Hoffman v. Halden*, 268 F.2d 280, 300 (9th Cir. 1959)).

> [T]he failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of allegations of malice, motive or intent.  His act is required by law.  Even if the statute were later held void or the conviction later set aside, so long as he acted under authority of the writ or warrant, he was performing a duty which the law at that time required him to perform.

*Hoffman*, 268 F.2d at 300 (overruled on other grounds by *Cohen v. Norris*, 300

F.2d 24, 29-30 (9th Cir. 1962)).

The Court concludes there exists an historical basis and a common-law tradition of extending absolute immunity to corrections officials and jailers for restraining a convicted individual "pursuant to a facially valid order of conviction."  *Patterson*, 999 F.2d at 1240.  In general, absolute immunity has traditionally been extended to "persons who faithfully execute valid court orders [thereby immunizing them] from liability for damages in civil rights actions challenging conduct authorized by the order."  *Coverdell v. Dept. of Social and Health Services*, 834 F.2d 758, 764-65 (9th Cir. 1987) (citations omitted).

FINDINGS AND RECOMMENDATION - Page 13

The second prong of the absolute immunity analysis requires the Court to consider whether any reasons exist which counsel against extending absolute immunity to jailers in § 1983 actions alleging wrongful incarceration or restraint on a person's liberty.  The Court finds no such reasons exist in the context of the circumstances alleged in this case.

To the contrary, the Court concludes it is necessary to extend quasi-judicial immunity to corrections officials who simply execute court orders.  First, in the absence of an extension of immunity corrections officials would become the focus of prisoners' suits challenging the validity of the restraint on their liberty; they would "become a 'lightning rod for harassing litigation aimed at judicial orders.' " *Patterson*, 999 F.2d at 1240 (citations omitted).  Second, regardless of whether a warden believes a person's incarceration may be invalid, the warden is obligated to comply with the court's order and "[t]he warden has no power to do anything to alleviate his liability."  *Id*.  Finally, suits against a warden stemming from the fact of a person's restraint or confinement present "a serious threat to the integrity of the judicial process." *Id*. State officials who carry out court orders are " 'integral parts of the judicial process[,]' [... and] [t]he fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." *Coverdell*, 834 F.2d at 765 (citation omitted).  Based on these

FINDINGS AND RECOMMENDATION - Page 14

reasons, the second prong of the absolute immunity analysis is satisfied under the circumstances of this case.

Based on the forgoing, and pursuant to the two-step approach followed by the United States Supreme Court, the Court concludes that a corrections official "is absolutely immune from damages flowing from the *fact* of a prisoner's incarceration, when that incarceration occurs pursuant to a facially valid order of confinement." *Patterson*, 999 F.2d at 1241 (emphasis in original). Therefore, Slaughter and Mahoney are entitled to absolute quasi-judicial immunity from liability under § 1983 in this action.[3] *See Wilson v. Poulos*, 2010 WL 1068067, *3-5 (S.D. Cal. 2010) (concluding, pursuant to the two-step analytical approach, that a jailer was entitled to absolute quasi-judicial immunity for incarcerating an individual pursuant to a facially valid judgment of conviction). Defendants' motion should be granted in this respect.

---

[3]Although the Ninth Circuit has not expressly addressed the issue of whether absolute immunity should be extended to corrections officials for incarcerating or restraining an individual pursuant to a facially valid judgment of conviction, Circuit Judge Ronald Gould has issued a concurring opinion on the matter. In his opinion Circuit Judge Gould stated he agreed with the analysis in *Patterson*, and he indicated "that a corrections official who executes a valid court order [should be] entitled to absolute immunity from liability based on the fact of a prisoner's incarceration." *Sadoski v. Mosley*, 435 F.3d 1076, 1077 (9th Cir. 2006) (Gould, J., concurring) (citing *Patterson* and *Coverdell*, supra).

FINDINGS AND RECOMMENDATION - Page 15

**D.**    **Supplemental Jurisdiction Over Engebretsons' State Law Claims**

Since the Court concludes the Engebretsons' federal claims under 42 U.S.C. § 1983 should be dismissed as a matter of law, the Court must consider whether it should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any other claims advanced by the Engebretsons under Montana law.  Catherine has pled a claim for loss of consortium which could only be presented under state law.

Section 1367 provides that where a district court has original jurisdiction in a civil action it shall also have supplemental jurisdiction over other claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"  28 U.S.C. § 1367(a).   However, the district court may decline to exercise supplemental jurisdiction for various reasons stated in the statute, including when "the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  Supplemental jurisdiction under 28 U.S.C. § 1367(c) is discretionary, and courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims."  *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).

FINDINGS AND RECOMMENDATION - Page 16

Because the Court recommends dismiss of all of the Engebretsons' federal claims, it is further recommended that the District Court should decline to exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(c)(3).  Any claims they may have under Montana law are matters of state and local concern, and are more properly addressed in the courts of the State of Montana.

**IV.**    **CONCLUSION**

Based on the forgoing, **IT IS HEREBY RECOMMENDED** that Defendants William Slaughter, Mike Mahoney, and the State of Montana's Motion to Dismiss should be **GRANTED** on the basis they are entitled to immunity from liability.  The Engebretsons' claims advanced under federal law and 42 U.S.C. § 1983 should be **DISMISSED**, while their claims advanced under Montana law should be **DISMISSED** without prejudice.

DATED this 10th day of June, 2010.


 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge


FINDINGS AND RECOMMENDATION - Page 17